**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RENE GREEN, INDIVIDUALLY AND AS | § | |
| HEIR OF JONATHAN EDWARD BRODY | § | |
| GREEN, | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 2:07-CV-372 (TJW) |
| v. | § | |
| | § | |
| BLITZ U.S.A., INC., | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are various motions by Plaintiff Rene Green, Individually and as heir of Jonathan Edward Brody Breen, and Defendant Blitz U.S.A., Inc. ("Blitz"). (Dkt. Nos. 244, 199 & 195.) The Court DENIES Plaintiff's Motion to Re-Open the Case (Dkt. No. 199) for the reasons set forth in Magistrate Judge Everingham's January 12, 2011 Report and Recommendation (Dkt. No. 243). The Court DENIES Blitz's Motion for Reconsideration. (Dkt. No. 244.) The Court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's Motion for Sanctions. (Dkt. No. 195.) The Court holds that Blitz is subject to sanctions for various discovery violations as described below in this Memorandum Opinion & Order. The Court orders Blitz to pay $250,000.00 in civil contempt sanctions to the plaintiff in this case. The Court additionally orders that Blitz has thirty (30) days from the date of this Memorandum Opinion & Order to furnish a copy of this Memorandum Opinion & Order to every Plaintiff in every lawsuit it has had proceeding against it, or is currently proceeding against it, for the past two years. The Court issues an additional $500,000.00 sanction that will be tolled for thirty (30) days from the date of this Memorandum Opinion & Order. At the end of that time period, if Blitz has certified with this Court that it has complied with the Court's order, the $500,000.00

sanction will be extinguished.  Finally, for the next five years, Blitz is ordered that in every new lawsuit it participates in as a party, whether plaintiff, defendant, or in another official capacity, it must file a copy of this Memorandum Opinion and Order with its first pleading or filing in that particular court.  This Court expresses no opinion as to the manner in which a particular court may use or not use such copy.

## I.    BACKGROUND

The instant case is one of several similar cases against Blitz, including *Delz v. Blitz*, 1:09-cv-251-LY ("the *Delz* case"), *Gaddy v. Blitz*, 2:09-cv-52-DF ("the *Gaddy* case"), and *Zecaida v. Blitz,* 6:09-cv-283 ("the *Zecaida* case").  In the motion under consideration, Ms. Green asks the Court to sanction Blitz for what she believes to be a systematic destruction of evidence and repeated discovery violations.  Ms. Green levies broad allegations against Blitz—allegations that have expanded since her motions were originally filed.  The Court has carefully reviewed the allegations made by Ms. Green in light of the procedural posture of this case and has attempted to evaluate the allegations based on the sworn testimony in the record related to each specific allegation.  Further, the Court held a show cause hearing on February 1, 2011 as directed by Magistrate Judge Everingham's January 12, 2011 Report and Recommendation.  (Dkt. No. 243 at 12.)  The Court's efforts are compounded by the numerous supplements that have been filed since Ms. Green's original motion.

To understand the alleged discovery violations, it is important to understand the procedural posture of this case, the parties' positions at trial, and this case's relationship with numerous similar cases against Blitz.  In 2007, Rene Green brought this products liability lawsuit, asserting that a gas can manufactured by Blitz caused the death of Brody Green.  One of Green's major theories for liability was that the gas can did not include a flame arrester.  (*See* Amended Complaint, Dkt. No. 33, at 5.)  One of Blitz's major defense theories was that a flame

2

arrester was not included on the gas can because flame arresters are ineffective.[1]   At the conclusion of the evidence and before the jury returned a verdict, the parties entered into a high-low settlement agreement.  (Dkt. No. 195, at 2.)  The jury returned a unanimous verdict against the plaintiffs, resulting in a settlement figure at the low end of the high-low range.  (*Id.*)  The case was closed on November 10, 2008.  Counsel for the plaintiff in this case ("the *Green* case"), however, is also counsel in the related *Delz* case in the Western District of Texas.  (Dkt. No. 195, at 3.)  Through discovery in that case, nearly a year after the trial in the present case, counsel learned of documents that were not produced in this case and promptly filed the present motion in February of 2010.

Ms. Green argues that Blitz failed to produce certain documents and also failed to preserve documents.  The majority of these documents that were not produced relate to the flame arrester, or Blitz's interest in potentially using a flame arrester, in its gas cans.  These documents are discussed in detail in the Analysis section of this Memorandum Opinion and Order.  Ms. Green argues that the Court's Discovery Order required the production of all relevant documents, including electronically stored information, within 45 days of the scheduling conference, and Blitz's failure to do so violated the order.  Ms. Green contends that Blitz's refusal to timely produce relevant materials was done in bad faith and has resulted in manifest injustice.  She asserts that—had the withheld documents been available to her at trial—the outcome of the trial would have been different and that she would have been entitled to the high-end of the high-low

---

[1] *See* Blitz's Closing Argument Transcript, Dkt. No. 192, at 140:14-19 ("Now, I'll tell you – you know, Blitz – Blitz hasn't left anything out.  They're not putting flame arresters in because they're running amuck.  They're not putting in flame arresters in because they don't do anything affirmative and there's some potential problems with it."); *id.* at 141:3-4 ("That flame arrester serves no purpose . . . ."); *id.* at 141:21-142:1 ("Not one time has any federal government ASTM standard suggested that flame arresters are necessary, and it's because they're not.  It's not because there's a secret.  It's not because anybody's hidden anything.  It's because the science shows that they don't work.  They're unnecessary.").

settlement.

Nearly simultaneously with its motion for sanctions, Plaintiff in this case filed a motion to re-open the case. (Dkt. No. 199.) Magistrate Judge Everingham issued a Report and Recommendation to deny the motion to re-open the case (Dkt. No. 243), and that Report and Recommendation is adopted in this Memorandum Opinion and Order. Judge Everingham's primary reason for recommending denying the motion to re-open the case is because of the one-year statute of limitations under Federal Rule of Civil Procedure 60(b)(1)-(3). Therefore, the only issue left is whether sanctions are appropriate against Blitz for its alleged discovery abuse.

This case is not the only case where Blitz has been accused of discovery abuse. In the *Gaddy* case and *Zecaida* cases, for example, the plaintiffs also filed a motion for sanctions. *See* Order Granting-in-part and Denying-in-part, *Gaddy v. Blitz U.S.A., Inc.*, Dkt. No. 199 (Sept. 13, 2010). Both of these cases included product liability claims for Blitz failing to include a flame arrester in its gas cans. *Id.* at 2. The Court in *Gaddy* and *Zecaida* sanctioned Blitz by allowing evidence in those cases regarding Blitz's discovery abuses and allowing a jury instruction that Blitz failed its duties of discovery. *Id.* at 24. There are many other similar cases against Blitz as noted at the beginning of this Memorandum Opinion and Order.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. The Fifth Circuit has stated "we recognize that a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of the case." *Fleming v. Assoc. v. Newby & Tittle*, 529 F.3d 631, 638 (5th Cir. 2008).[2] *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-396

---

[2] Although *Fleming* held that the settlement agreement precluded sanctions in that case, 529 F.3d at 639-41, this Court agrees with Magistrate Judge Everingham's reasoning that *Fleming* is

(1990).  This Court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i).  Rule 37 also permits this court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S. Ct. 2455, 65 L.Ed.2d 488 (1980); *accord* Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi).  "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express*, 447 U.S. at 763–64.

Rule 37(b)(2) requires that any sanction be just and that the sanction must be related to the particular claim that was the subject of the discovery violations.  *Compaq Computer Corp. v. Ergonome Inc.,* 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted).  Further, the penalized party's discovery violation must be willful.  *United States v. $49,000 Currency,* 330 F.3d 371, 376 (5th Cir. 2003).  Finally, a severe sanction under Rule 37 is to be employed only where a lesser sanction would not substantially achieve the desired deterrent effect.  *Id.*

---

distinguishable from this case.  (*See* Report and Recommendation, Dkt. No. 243, at 10-11.)  In addition, before the trial of this case, there were motions to compel and for sanctions that Plaintiff had filed against Blitz.  (Dkt. Nos. 59 & 70.)  At the Show Cause Hearing, Blitz implied that the settlement between the parties had incorporated any of those potential compensatory sanctions and therefore the Court could not grant sanctions under *Fleming*.  The Court finds nothing to support this assertion in the record, in fact, the record shows the opposite.  The Court denied the motion to compel and for sanctions (Dkt. Nos. 59 & 70) in an Order on August 28, 2008 based on the parties representations that they had resolved their discovery disputes.  (Dkt. No. 142.)  This was before the trial began in this case; however, the settlement agreement entered into by the parties was negotiated towards the end of the trial—during jury deliberations—almost two months after the Court denied the motion to compel and for sanctions. (*See* Blitz Opposition Mtn., Dkt. No. 208, at 2 ("While the jury deliberated, the parties entered into a high-low agreement through which the parties agreed that, regardless of the verdict, Plaintiff would dismiss the case with prejudice and that the parties would execute a traditional release.").)

In addition to Rule 37, this court also has inherent powers to enter sanctions. The inherent powers of this Court are those which "are necessary to the exercise of all others." *Roadway Express,* 447 U.S. at 764 (citation omitted). The contempt sanction is the most prominent inherent power, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Id.* (citation omitted). The Fifth Circuit has recognized that the inherent power "is necessarily incident to the judicial power granted under Article III of the Constitution." *Gonzalez v. Trinity Marine Group, Inc.,* 117 F.3d 894, 898 (5th Cir. 1997). When inherent powers are invoked, however, they must be exercised with "restraint and discretion." *Id.* Therefore, severe sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." *Id.* In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules. *Natural Gas Pipeline v. Energy Gathering, Inc.,* 2 F.3d 1397, 1407 (5th Cir. 1993).

## III.   ANALYSIS

### A.   Blitz's Discovery Abuse for Failure to Disclose Documents

Before proceeding into the specific documents at issue in the plaintiff's motion, it is important to understand how Blitz originally conducted its discovery in this case. Blitz had a single employee, Mr. Larry Chrisco, who from 2004 until his retirement in late 2007 was solely responsible for searching for and collecting documents relevant to ongoing litigation against Blitz. (Show Cause Hearing, Feb. 1, 2011, at 19.) Prior to 2004, beginning in at least the late 1990s, Mr. Chrisco shared this responsibility with another employee at Blitz—Mr. Jackson. (*Id.*) Mr. Chrisco worked in the product development department at Blitz. (*Id.* at 18.) In addition, Mr. Chrisco was Blitz's corporate representative at the trial of this case and Blitz's only witness called at the February 1, 2011 Show Cause Hearing. Mr. Chrisco described his discovery efforts

6

as follows:

> When Mr. Jackson and I were working jointly, we would meet with – we met with counsel.  We were contacted regarding when a claim was filed, and that request for discoveries were made.  We would sit with counsel, and at that point in time, we had no national coordinating counsel.  It was strictly a local defense attorney in that particular state.
>
> We would look at those requests, talk with him to understand what was relevant for production, and from there, we would go out – I would go and talk with areas that – that most likely documents would be in and ask – talk with them and explain to them what we were looking for.  Mr. Jackson would do the same thing.
>
> . . . .
>
> When Mr. Jackson was no longer involved, I went through this same procedure in terms of looking at the complaint, and at that point in time, we had brought on a national coordinating counsel, Mr. Murphy, at that point, he would – we would go through the claims, the suits, the discovery requests, and so I would get an understanding of what materials that we needed to be searching for, what materials were relevant to this, and at that point in time, once I understood that, I would visit with those areas or those departments that had the potential to have those documents in their possession.

(Show Cause Hearing Transcript, at 20-21.)  When visiting those departments, Mr. Chrisco noted that he was a "face-to-face" guy and he would "go talk with them about what [he was] looking for, what it was about, and explain what those documents could be, and ask them to look for those" and bring them back to him.  (*Id.* at 24.)  In addition, Mr. Chrisco had some documents himself that he disclosed—especially documents relating to flame arresters, given that Mr. Chrisco headed up the research and investigation around flame arresters.  (*Id.* at 21.)  As discussed above, documents related to flame arresters were particularly relevant in this case because one of Plaintiff's major arguments at trial was that the gas can at issue should have had a flame arrester.

In carrying out his duties to conduct discovery, Mr. Chrisco (i.e., Blitz) educated himself regarding the types of documents that were relevant and then talked to the departments and/or

individuals he felt were likely to have those documents.  Mr. Chrisco, however, acting as Blitz's agent for gathering discovery, did not institute a litigation-hold of documents, do any electronic word searches for emails, or talk with the IT department regarding how to search for electronic documents.  These failures are in part the subject of this Memorandum Opinion & Order.

### 1.   Blitz's Failure to Disclose Documents in the Present Case

With that background in mind, the Court discusses the particular documents that were not produced in this case.  Ms. Green identifies numerous documents not produced in this case that are extremely relevant and material.  Specifically, at the Show Cause Hearing held on February 1, 2011, Ms. Green focused on ten documents that were not disclosed.  (*See, e.g.*, Show Cause Hearing, Feb. 1, 2011, Dkt. No. 250, Pl.'s Exs. 1, 3, 4, 5, 6, 8, 9, 10, 11, 12.)  Many of these documents are similar, so the Court's analysis focuses only on three documents, which, in this Court's view, these three items fairly represent the types of documents not disclosed by Blitz in this case.

First, the Court considers Plaintiff's Exhibit 1 presented at the Show Cause Hearing on February 1, 2011, which has come to be known as the "Wish List."  (Hearing Transcript, Larry Chrisco Cross Examination, Dkt. No. 250, at 33.)  This was a handwritten letter or memorandum dated August 16, 2005, from Rocky Flick, the former CEO of Blitz, to Larry Chrisco.  (*Id.*)  The letter had the subject label of "My Wish List" and the top line of the letter reads "Expectations for Gas Cans (To be completed in next 2 yrs)."  The second point on the "Wish List" stated: "Develop & introduce device to eliminate flashback from a flame source.  Water heater incidents should be the test case for this.  Once this is developed we should advocate the device be standardized under ASTM req's [sic] or laws."  (Show Cause Hearing, Feb. 1, 2011, Pl. Ex. 1.) This letter was written to Larry Chrisco approximately two years before this lawsuit was filed

and Mr. Chrisco admits it is relevant to this case.  (Show Cause Hearing Transcript, at 58.)  It is undisputed, however, that the letter was not produced in the present case.

The next document is Plaintiff's Exhibit 4 presented at the Show Cause Hearing.  This document is an email from Chuck Craig to Charlie Forbis, David Price, and Larry Chrisco that was sent on August 8, 2005.  The email is a forwarded email from Douglas Hughes, and the email sent from Chuck Craig has the subject "FW: Flame Arrester."  In the original email that was forwarded by Chuck Craig, Douglas Hughes states:

> I've been in meetings and travelling all day, so I apologize, I haven't had a chance to call you back earlier today.  As far as your question for the flame arrester, the marine industry uses them in all the boat tanks, so the technology and testing has to be in place today.  I am going to look through some of the Coast Guard test procedures and see if I can't come up with something.

(Show Cause Hearing, Feb. 1, 2011, Pl. Ex. 4.)  Larry Chrisco, when collecting documents for discovery, stated that he talked to Charlie Forbis about documents he had relevant to this case.  (Show Cause Hearing Transcript, at 26-27.)  Larry Chrisco could not remember if he talked face-to-face with David Price about gathering discoverable documents, but Mr. Chrisco was sure that Mr. Price had received the message to gather relevant documents—potentially through Charlie Forbis.  (*Id.* at 28-29; 48-49.)  Indeed, Larry Chrisco, Charlie Forbis, and David Price were the three people at Blitz that put together the flame arrester project in 2005.  Nevertheless, despite Chuck Craig, Charlie Forbis, David Price, and Larry Chrisco all having been a party to the email and the subject being "FW: Flame Arrester," it is undisputed that this email was not produced in this case.

The third and final document the Court considers is Plaintiff's Exhibit 10 at the Show Cause Hearing.  Exhibit 10 is titled "Development Team Meeting: 02-08-07."  (Show Cause Hearing, Feb. 1, 2011, Pl. Ex. 10.)  The record is ambiguous regarding what exactly the

document is, however, it appears on its face to be either a bullet list of things to be discussed at

the February 8, 2007 Development Team Meeting or a bullet list—perhaps minutes—of things

that were discussed at the meeting.  The document states that Marion George, Grant Kernan,

Todd McClain, Jim Calcagno, Kristi McClain, and Larry[3] were in attendance.  One of the bullet

points in the document, under the header "Scenarios," states to "Exit gas can for 3-5 years,

develop other business, and re-enter w/lower liability (?) [sic] and safer CARB product."  (Show

Cause Hearing, Feb. 1, 2011, Pl. Ex. 10, at 2.)  It is undisputed that this document was not

produced in this case, and Mr. Chrisco admitted that it would have been relevant.  (Show Cause

Hearing Transcript, at 59.)

### 2.     Analysis of Blitz's Failure to Disclose

The three documents described above demonstrate the types of documents that were not

disclosed by Blitz to the plaintiff in the present case.  They are indisputably relevant.  Other

documents which were not disclosed were presented to the Court at the Show Cause Hearing,

and these documents are similar to the three described above, as they are emails, reports, or other

documents outlining meetings held by Blitz employees related to flame arresters.  (*See, e.g.*,

Show Cause Hearing, Feb. 1, 2011, Pl.'s Exs. 1, 3, 4, 5, 6, 8, 9, 10, 11, 12.)

Based on Blitz's failure to disclose these documents, the Court finds that Blitz's conduct

constitutes a willful violation of the Court's Discovery Order.  The Discovery Order stated that

"[e]ach party . . . shall provide to every other party the following: (a) a copy of all documents,

data compilations, and tangible things in the possession, custody, or control of the party that are

relevant to the pleaded claims or defenses involved in this action."  (Dkt. No. 20, at 3.)  The

---

[3] At the hearing, Larry Chrisco was unclear whether the "Larry" on the document was referring
to himself or another Larry.  (Show Cause Hearing Transcript, at 47-48.)  The meeting was in
February of 2007 and Larry Chrisco retired in September of 2007, so Larry Chrisco was not sure
whether he was at that meeting.

parties, when given the opportunity, did not object to the additional disclosures required by this Court's Discovery Order.  In addition, in the Discovery Order, there is an order to supplement the disclosures.  (*Id.* at 5.)  Further, in the proposed pretrial order that was submitted jointly by the parties, the parties made the certification that "[t]he undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following: (1) Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders."  (Dkt. No. 126, at 12.)  Blitz violated these provisions of the Discovery Order and made a false certification in its pretrial order by not disclosing the documents discussed above.

Additionally, the Court finds that the violation of the Discovery Order was willful given the context and the type of documents not disclosed.  Exhibit 4, the August 8, 2005 email, shows the gravity of Blitz's discovery violations for failing to produce relevant documents.  The email had the words "Flame Arrester" in the subject line of the email.  There were four parties to the email—one person sent the email to three people.  Larry Chrisco, the person at Blitz in charge of collecting documents for discovery, was a party to the email.  Further, Larry Chrisco testified that he talked to some of the other parties on the email in order to collect documents to produce in this litigation.  Despite all of this, the email was still not produced.  Perhaps more shocking, however, is the ease in which this document could have been discovered and produced in this case.    Any competent electronic discovery effort would have located this email.    If Blitz performed a word search of the emails of, for example, Larry Chrisco,[4] then this email surely would have been discovered.  The search term of "flame arrester" may have been the most

---

[4] Larry Chrisco may have been the most obvious person to have his email electronically searched for information relating to flame arresters.  Larry Chrisco headed up the research and investigation around flame arresters.  (Show Cause Hearing Transcript, at 20-21.)

obvious term to search for in electronic documents in this case, and "flame arrester" was used in the title of this email.  Blitz, however, did not attempt to search electronically for emails.  To make things worse, Larry Chrisco, the person in charge of discovery for Blitz, readily admits that "I am about as computer literate—illiterate as they get."[5]  (Show Cause Hearing Transcript, at 37.)  But Chrisco, obviously aware of his lack of computer prowess, did not even attempt to consult with the IT Department about how electronic information could be discovered.  (*Id.* at 85.)  Accordingly, despite Blitz's IT Department's ability to do electronic word searches for emails, no word search was ever done.[6]

Although the non-produced emails show Blitz's *lack of effort* in its discovery requirements, the "Wish List" (Exhibit 1) and the "Development Team Meeting" (Exhibit 10) show the *prejudice* to the plaintiff for the failure to produce the documents.  The "Wish List" is written by Blitz's then CEO and states in one part that he wished to "Develop & introduce device to eliminate flashback from a flame source."  (Show Cause Hearing, Feb. 1, 2011, Pl. Ex. 1.)  This document would have been extremely valuable to the plaintiff to rebut Blitz's claims that flame arresters would not have helped to prevent the incident at issue because they were

---

[5] That Blitz put someone in charge of its discovery who knows nothing about computers does not help Blitz's effort to show that it was reasonable in its discovery obligations.

[6] Blitz, in its filings after the Show Cause Hearing, implied it could not have done such searches. This is misleading, however, because the affidavit provided by David Lamb said only that it could not have done the searches "*across the* Blitz e-mail system or electronic calendar system." (Lamb Decl. attached to Blitz's Br., Dkt. No. 253, Ex. B., at 1-2. (emphasis added).)  Paul Hale—David Lamb's supervisor—has given sworn testimony that Blitz could have done email searches in individual email accounts.  (*See* Paul Hale Deposition attached to Dkt. No. 255, Ex. 1, at 90-91.)  Paul Hale states that "[i]f you were an administrator and had administrative rights to those accounts, you could have individually logged into each of those accounts and done the search."  (*Id.*)  Therefore, the IT Department at Blitz could have done word searches for emails containing the words "flame arrester" on individual employees' accounts.  Blitz could have, and should have, at least searched the email accounts of the employees most likely to have relevant information related to flame arresters, including—Larry Chrisco,  Charlie Forbis, and David Price—the three people in charge of Blitz's efforts to learn about flame arresters.

ineffective.[7]  The "Development Team Meeting" document would have similarly helpful to the

plaintiff.  Being able to show the jury a document where Blitz itself stated: "Exit gas can for 3-5

years, develop other business, and re-enter w/lower liability (?) [sic] and safer CARB product,"

would have undoubtedly helped the plaintiff's liability argument.  (Show Cause Hearing, Feb. 1,

2011, Pl. Ex. 10, at 2.)

In addition to its failure to produce relevant documents, Blitz also objected to multiple

exhibits presented by the Plaintiff at the Show Cause Hearing as being privileged.  In a later

filing with this Court, Blitz admitted that those exhibits were not included on any privilege log.

(Dkt. No. 251, at 2.)  In addition, Blitz admitted that there was a Dunbar Engineering document

related to flame arresters that it did not produce because Blitz thought it was work product.  Then

the document, however, was left off the privilege log.  (Dkt. No. 246, at 11 ("The [Dunbar

Engineering] documents themselves were not originally a part of the production set because they

had initially been designated as work product but were mistakenly left off the log.").)  This

conduct shows a further violation of the Court's Discovery Order in Blitz failing to properly

disclose on its privilege logs documents that it is withholding based on a claim of privilege.  (*See*

Dkt. No. 20, at 4.)

Blitz argues that Federal Rule of Civil Procedure 26(g) requires only a reasonable effort

to search for and produce documents responsive to a discovery request.  The record before this

Court does not show a reasonable effort; instead, as noted above, the Court finds that Blitz

willfully violated its Discovery Order.  One need not look any further than the failure to search

for and produce emails that bear the title "flame arrester" in a case where the lack of a flame

---

[7] *See* Blitz's Closing Argument Transcript, Dkt. No. 192, at 140:14-19 ("Now, I'll tell you – you know, Blitz – Blitz hasn't left anything out.  They're not putting flame arresters in because they're running amuck.  They're not putting in flame arresters in because they don't do anything affirmative and there's some potential problems with it.").

arrester was a key issue.   Blitz's additional discovery abuses are additional proof of Blitz's

blatant disregard for the Court's Discovery Order.   The Court holds that sanctions are

appropriate under the Court's inherent powers and pursuant to Federal Rule of Civil Procedure

37.  The proper sanctions are discussed below in this Memorandum Opinion and Order.

### B.      Blitz's Discovery Abuse for Failure to Preserve Documents

The Court also holds that Blitz failed to properly preserve documents for litigation.

When litigation commences, a party must suspend its routine document retention and destruction

policy and establish a "litigation hold" to ensure the preservation of relevant documents.  *Tantivy*

*Commc'ns, Inc. v. Lucent Tech. Inc.*, Civ. No. 2:04-cv-79-TJW, 2005 WL 2860976, at *2 (E.D.

Tex. Nov. 1, 2005) (J. Ward) ("Lucent and its counsel are well aware that a party in litigation

must suspend its routine document retention/destruction policy and establish a 'litigation hold' to

ensure the preservation of relevant documents."); *see also Rimkus Consulting Group, Inc. v.*

*Cammarata*, 688 F. Supp. 2d 598, 612-13 (S.D. Tex. 2010) (discussing the duty to preserve).

As discussed above, Blitz made little, if any, effort to discharge its electronic discovery

obligations.   But Blitz also failed to preserve its electronic documents.   Far from instituting a

litigation hold on relevant electronic documents, Blitz actually asked its employees to routinely

delete electronic documents.   From 2004 through 2007, Blitz's IT department head, Paul Hale,

routinely sent emails to all Blitz employees instructing them and encouraging them to delete

email.  (*See generally* Dkt. No. 226, Ex. 7(a)-(t).)   One email said "Will everyone delete all old

emails that you can, please? (And then remember to go into the deleted folder, select all items,

and delete that as well.)"  (*Id.* at Ex. 7(h).)   Other emails titled "Clean and Delete All E-Mail

Folders, Please!" and "Don't forget the 'Sent' folder" were also sent.  (*Id.* at Ex. 7(c) & 7(d).)

Most of these emails were in the 2004 to 2006 time frame, and over that short time frame there

are at least ten emails in the record where Paul Hale requested that all employees at Blitz to delete their emails.   During this precise time period, Blitz was actively defending multiple products liability lawsuits relating to its gas cans and had a duty to preserve evidence.  Paul Hale admits that when he sent these multiple emails telling employees to delete their email, the employees were not told to retain email relevant to ongoing litigation.  (*Id.* at Ex. 9, page 69, lines 16-20.)  Additionally, during the Feb. 1, 2011 Show Cause Hearing, Larry Chrisco admitted that he never communicated any type of "litigation hold" request to the employees at Blitz:

> THE COURT: Okay. All right.  And you don't recall any conversation at any time with Mr. Paul Hale about what he might or might not do as the director of IT, information technology?
>
> THE WITNESS [Larry Chrisco]: Your Honor, I had conversations with Paul Hale, but not specific to that. Paul was a good friend. Most of mine was with Tom Jackson. He worked for us at some period of time.
>
> THE COURT: And you don't recall any conversations other -- with -- about searching e-mail with Mr. David Lamb.
>
> THE WITNESS: I don't recall any conversations I had with Mr. Lamb regarding e-mails, no.
>
> THE COURT: And you don't recall ever giving any type of written direction or electronic communication all -- to everyone about holding or not -- holding onto all documents because litigation or anything like that?
>
> THE WITNESS: No, sir, I -- in talking with them, I just -- they were aware that we were going through litigation and why we were pulling documents and asking for documents and that it was relevant we had those things, so...
>
> THE COURT: Well, I know. So there's no written communication, I mean --
>
> THE WITNESS: No, sir.
>
> THE COURT: -- a memo or anything like that?
>
> THE WITNESS: I don't recall that there was.
>
> THE COURT: Well, are you telling me that you -- when you talked to him about "We need to get these documents together; we've got these lawsuits," are you

telling me that you recall or you don't recall discussing with them, "Now, make sure that you maintain all these documents?" Do you have any recollection of that type of conversation?

THE WITNESS: Sir, I don't recall that I specifically used those words, "retain all these documents."

THE COURT: Well, what do you recall that you told them about keeping the documents? I understand you've told me that you talked with these different people about they need to find the documents.

THE WITNESS: Correct.

THE COURT: Do you have those specific recollections?

THE WITNESS: I have those very specific recollections, that's correct.

THE COURT: I understand that, now, but my question is did you -- what do you recall that you told them about keeping the document -- preserve -- whatever word you want to use when we say keeping or preserving the document, I'm not trying to put words in your mouth, however you want -- what do you recall about that, or do you have any recollection?

THE WITNESS: I don't have any recollection as we sit here, Your Honor.

THE COURT: Okay. That's all. You may step down. Thank you.

(Show Cause Hearing Transcript, Dkt. No. 250, at 85:7-87:13.)

Finally, to make matters worse, Blitz rotated its backup tapes every two weeks during this time period—at such time the old backup tapes are permanently deleted—so the deleted emails by the employees are permanently lost. (*See* Dkt. No. 226, Ex. 23, 186:15-189:7.) Because of this systematic destruction of potentially relevant documents, it will never be known how much prejudice against the plaintiff was actually caused by Blitz's failure to preserve documents. The Court holds that Blitz's failure to preserve is sanctionable under the Court's inherent powers.

### C.    Sanctions for Blitz's Discovery Abuses

Though the analysis above outlines specific instances of discovery abuse and violations of court orders in this case, perhaps more alarming, however, is Blitz's lack of appreciation of

the discovery process in general.  Despite Blitz being sued in multiple districts for its allegedly defective gas cans beginning primarily in 2002 (Dkt. No. 250, at 13), Blitz failed to begin scrubbing its servers until early 2009, nearly a year after the trial in this specific case.  Although such an expensive endeavor may not be required to satisfy its discovery obligations, Blitz at least had the capability to perform simple word searches of its email server files.  Such a search would have surely uncovered the email titled: "Flame Arrester," as the term "flame arrester" may have been the most obvious term to search in this products liability case regarding a gas container not including a flame arrester.  That Larry Crisco, Blitz's employee in charge of gathering discovery, did not know how to search for electronic documents is immaterial.  Blitz had an obligation to conduct such a search.  Perhaps Blitz should not appoint someone to coordinate discovery who is admittedly as "computer literate—illiterate as they get."  Or, alternatively, Mr. Crisco could have at least inquired with the Blitz IT Department regarding a search for electronic documents, which he admittedly did not do.

Now that the Court has outlined the specific instances of conduct by Blitz that warrant sanctions in this case, it will turn its attention to the sanctions that will be imposed on Blitz for its blatant discovery abuses.

### 1.    Legal Standard for Civil Contempt Sanctions

Under Federal Rule of Civil Procedure 37(b)(2)(vii), the Court may "treat[] as contempt of court the failure to obey any order."  Additionally, under the Court's inherent powers to impose sanctions, as noted above, the contempt sanction is the most prominent inherent power. *See Roadway Express*, 447 U.S. at 764.  Judicial sanctions for civil contempt may be "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."  *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000).  "The district court 'has broad discretion in the

assessment of damages in a civil contempt proceeding.'" *Id.* (citations omitted).  "'The purpose is to compensate for the damages sustained.  The public rights that the said court orders sought to protect are important measures of the remedy.'" *Id.* (citations omitted).  The Fifth Circuit has instructed that for sanctions under Rule 37(b)(2), "[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Compaq Computer Corp. v. Ergonome Incorp*., 387 F.3d 403, 413 (5th Cir. 2004).  For sanctions under the Court's inherent power, the Supreme Court has instructed that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express*, 447 U.S. at 765.

### 2.     Civil Compensatory Sanction of $250,000.00

The Court orders Blitz[8] to pay $250,000.00 in civil contempt sanctions to the plaintiff in this case.  This civil sanction is to compensate the plaintiff for losses sustained due to Blitz's multiple discovery violations.  *See Am. Airlines*, 228 F.3d 574 (stating that civil sanctions may be issued to compensate the complainant for losses sustained).  Given this Court's knowledge regarding the amount of the confidential settlement between the parties and the circumstances of that settlement, the Court finds that the settlement would have been not less than $250,000.00 higher if the plaintiff would have had the documents discussed in this Memorandum Opinion and Order.  Particularly, the Court finds that the "Wish List" (Exhibit 1) and the "Development Team Meeting" (Exhibit 10), which were not disclosed to the plaintiff, would have drastically increased the settlement value.  The "Wish List," for example, would have hurt, if not potentially eliminated, Blitz's defense that they did not add a flame arrester because it would not have been useful.

---

[8] The sanctions in this Memorandum Opinion & Order are directed at Blitz and not its attorneys.

Given the procedural posture of this case and the fact that the case has been closed for more than a year, as discussed in Magistrate Judge Everingham's January 21, 2011 Report and Recommendation (Dkt. No. 243), the Court is limited in its ability to sanction Blitz.  Besides civil contempt, none of the other potential sanctions under Rule 37(b)(2) are available at this point in this case.  Under the guidelines the Fifth Circuit has given for Rule 37(b)(2) sanctions, the Court finds that the civil contempt sanction of $250,000.00 is "just" given the extreme prejudice the plaintiff suffered by not having access to important documents.  Additionally, the sanction is "just"[9] given Blitz's multiple discovery violations and the gravity of those violations. The sanction is also related to the particular claim which was at issue—the sanction compensates the plaintiff for additional recovery she could and would have received if Blitz had met its discovery obligations.  Therefore, this particular civil contempt sanction of $250,000.00 is appropriate under Rule 37(b)(2).  In addition, the $250,000.00 civil contempt sanction is appropriate under the Court's inherent power, although the Court need not use its inherent power to sanction for contempt in order to justify the $250,000.00.[10]  Given Blitz's policy to delete emails regularly without regard to currently pending litigation, it is hard to tell how much value that information would have had to the plaintiff's case.

### 3. Civil Purging Sanction of $500,000.00

The Court additionally orders that Blitz has thirty (30) days from the date of this Memorandum Opinion & Order to furnish a copy of this Memorandum Opinion & Order to every Plaintiff in every lawsuit it has had proceeding against it, or is currently proceeding against

[9] The Court has held a Show Cause Hearing for Blitz to have notice and an opportunity to be heard.  There has also been hundreds of pages of briefing on this issue.
[10] The $250,000.00 sanction is for the Rule 37(b)(2) violation.

it, for the past two years.[11]   The Court issues an additional $500,000.00 sanction[12] that will be

tolled for thirty (30) days from the date of this Memorandum Opinion & Order.  At the end of the

thirty (30) days, if Blitz has certified with this Court that it has complied with the Court's order

to provide a copy of this Memorandum Opinion & Order to such parties, the $500,000.00 civil

sanction will be extinguished.  The Court may impose a civil contempt sanction to coerce—

known as a "purging" sanction—under Fifth Circuit law.  *See Am. Airlines*, 228 F.3d 574 (stating

that civil sanctions may be issued to coerce the defendant into compliance with the court's

order).

### 4.      Sanction to Encourage Future Compliance

Finally, for the next five years from the date of this Memorandum Opinion and Order,

Blitz is ordered that in every new lawsuit it participates in as a party, whether plaintiff,

defendant, or in another official capacity, it must file a copy of this Memorandum Opinion and

Order with its first pleading or filing in that particular court.  Given Blitz's consistent failure to

comply discovery obligations in this and related cases, the Court finds that this sanction is

necessary to ensure that Blitz complies with future discovery obligations.  As noted above, the

Court may impose sanctions in order to coerce the defendant into compliance.  *See Am. Airlines*,

228 F.3d 574.

## IV.   CONCLUSION

In conclusion, the Court holds that Blitz is subject to sanctions for various discovery

violations as described in this Memorandum Opinion & Order.  The Court orders Blitz to pay

$250,000.00 in civil contempt sanctions to the plaintiff in this case.  The Court additionally

---

[11]  The Court is imposing this sanction for essentially the same reasons as it has discussed for imposing the $250,000.00 civil contempt sanction.

[12]  To clarify, this $500,000.00 purging sanction is completely independent from the $250,000.00 compensatory sanction discussed above.

orders that Blitz has thirty (30) days from the date of this Memorandum Opinion & Order to furnish a copy of this Memorandum Opinion & Order to every Plaintiff in every lawsuit it has had proceeding against it, or is currently proceeding against it, for the past two years.  The Court issues an additional $500,000.00 sanction that will be tolled for thirty (30) days from the date of this Memorandum Opinion & Order.  At the end of said thirty (30) days, if Blitz has certified to this Court that it has complied with the Court's order, the $500,000.00 sanction will be extinguished.  Finally, for the next five years subsequent to the date of this Memorandum Opinion and Order, Blitz is ordered that in every new lawsuit it participates in as a party, whether plaintiff, defendant, or in another official capacity, it must file a copy of this Memorandum Opinion and Order with its first pleading or filing in that particular court.  This Court expresses no opinion as to the manner in which a particular court may use or not use such copy.

It is so ORDERED.

SIGNED this  1st  day of March, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE